Council, you may proceed. Are you alone? Mr. DePaulo is here. Everyone seems to be shy today. Nobody wants to sit at the Council. It's a nice table. Good morning. Good morning, Justice. Please support Elizabeth Capoletti on behalf of the appellant at Air Freight Express. It's respectfully submitted that the Commission's decision awarding penalties pursuant to Section 19K and attorneys' fees pursuant to Section 16 of the Act should be vacated as the Commission failed to make an award for the underlying expenses, the medical expenses. Now, there's no question that Section 19K of the Act certainly vests discretionary powers in the Commission to award penalties pursuant to Section 19K against employers whose conduct merits such penalties. But Section 19K presupposes that there'll actually be an underlying award. The language in Section 19 of the Act specifically states that such penalties, quote, is equal to 50 percent amount payable at the time of the award. Can I get a quick one question? Sure. What effect does a settlement contract have, and arguably, does it have the same legal effect as an award? And I appreciate that's what the appellee – the settlement contract delineated that the claimant had his rights under Section 8A to remain open, that he would still be able to access care that was reasonable, necessary, and related. But nothing in those settlement contracts delineated what those medical expenses might be 20 years later. I mean, we are talking about treatment that spanned 20 years. Those contracts were interim. So you're saying that the employer would be liable for all reasonable and necessary medical expenses associated with a claimant's work-related accident. Didn't it say that? That is correct. And that's what it says. It's all reasonable, necessary, and related expenses. And that was actually what the purpose of the 8-8 hearing was – I mean, petition was in all of those hearings. It was which of these medical expenses are, in fact, reasonable, necessary, and related to the injury from 1985. It's not that every expense or every medical treatment that the claimant undertakes would be necessarily related to the 1985. How would the language be different from the award? So what – are we parsing words here? Wasn't the intent the same as an award would have been pursuant to the settlement contract? The intent from the settlement contract was to allow him the ability to go into court and say, hey, I have certain expenses under Section 8A that are reasonable, necessary, and related to the injury from 1985. The settlement contract – I mean, the settlement contract didn't specifically state, here are – respondent, you're liable for $20,000 to St. Francis Hospital. You're liable for $20,000 to, you know, Central DuPage Hospital. I would say then that, yes, that would be a specific award pursuant to the settlement contract. This settlement contract did not delineate anything other than that he had access under Section 8A to the medical expenses that are reasonable, necessary, and related. And there's never been a determination as to what those expenses are. I mean, the Commission, in its decision, made a statement that the claimant alleges that there are medical expenses, I believe, of $214,619.32. But there's nothing in the record that supports that number. What's this figure of $131,493.27? Wasn't that the Commission's findings regarding the precise dollar amount of medical expenses that the employer owed, failed to pay? That's correct. That's what – it was in their decision. They talked about that number regarding the medical expenses. They never ordered that those medical expenses be paid. The only thing in their decision that they ordered be paid was penalties pursuant to Section 19K and attorney's fees pursuant to Section 16. So you're saying, ah-ha, they didn't use certain magical language, right? No, I'm not saying, ah-ha, that they didn't use certain magical language. They didn't award any bills, and there's no basis in the record for that figure is what I'm saying. The $131,493.27 doesn't match up to any of the bills in the record. I could not come up with that figure by looking at what was underlying the bills that were actually offered into the evidence by the claimant. Well, I'm confused because initially I thought that the argument being made was that the Commission did not make an award and therefore penalties and fees could not be assessed. But from what you just said, it's an argument that that $131,493 figure doesn't find any support in the record. Okay. I'm sorry. So let me back up. There is that number that appears in their decision. They talk about that number, and that is how they come to calculating to the penalties. I appreciate that. But they never actually make an award. They never say, hey, employer, you are now liable to pay the $131,493.27 in medical expenses. They never made an award for medical expenses. I mean, they suit right in their decision. It is therefore ordered by the Commission that 19K penalties are this much and Section 16, you know, attorney's fees are this much. But they never say, respondent or employer, you are liable to pay these medical expenses. And these are the specific ones you are liable to pay. So what you want us to do is vacate and remand it to the Commission for an award. And what do you think is going to happen then? What do I think is going to happen then? Well, I think that point that they have to go through and actually do their job, which is say, hey, these are the expenses that are reasonable, necessary, and clausally related. Because we also have an issue here, too, about the fee schedule. Because many of these expenses were after 2006. And this figure, this 130 ---- Well, does the fee schedule apply? Pardon me? Does the fee schedule apply? Is it retroactive? It's for any expenses that I believe are after February 11th of 2006, I believe is the date of the fee schedule. It was what the Act says. Well, counsel, just in terms of the language, was it a finding or an award? I mean, doesn't a finding constitute a sufficient basis for the Commission to award fees and penalties? I mean, it says in the Commission's order that the Commission further finds that respondents' failure to make payment of the additional amount of 131,493.27 was not in good faith. I mean, if not a finding that that was the amount, what is that? Well, it's certainly a finding that they came up with. I mean, they came up with a number that they felt that the respondent had not paid. I can't tell you. I don't know exactly how they came to that number. I mean, I can make an educated guess. If instead they said that we find an award in the amount of 131,493.27 is reasonable,  I think it would have supported sufficient language if it said it is therefore hereby ordered by the Commission that the respondent pay medical expenses after 2006 pursuant to the fee schedule and pay these medical bills, whatever that total amount is. I mean, I think that that is what the whole purpose of the claimant's start of this process, and I think the claimant's attorney even said, I want a finding on what bills are due in owing, and I want a finding on whether or not the employer has acted in dilatory manner in not paying these bills. I mean, that was specifically requested in May 17th of, you know, 2011, and the Commission didn't make that finding. I mean, all it did was talk about penalties and fees, and it comes up with a number that there's no basis for, actually, in the record that corresponds to these bills. So I guess then if I'm supposed to take, I mean, this order, if I were to say to my client in this Honorable Court, should affirm the Commission's decision, I pay it, then is my obligation done? Because all they've ordered me to pay now is the 19K penalties and the Section 16 attorney's fees. So if that's affirmed, what about the $131,000 and thereabouts of medical bills? It might be entirely possible that you'd pay another round of penalties. Out there. Because I haven't paid, but I've never been ordered to pay any sort of medical bills. I mean, am I just supposed to presume from this order, this decision, that I'm supposed to go out now and also write a check even though I've never been ordered to pay bills? And there's clearly a contest at trial as to which bills were, in fact, reasonable, necessary, or related. It seems that if the Commission's already decided that it was vexatious and unreasonable for you not to pay those bills and award penalties, you know, despite the fact that there isn't ordering language in here, it would seem that they would continue to find that it's vexatious and unreasonable for you not to pay those bills on into the future. They might. And it would seem that any further delay might really be pretty risky. And that's possible. I mean, I'm not asking this Court to say that this is, I'm asking this to be vacated and it remanded back to the Commission for the Commission to basically do the job, which is to rule on the 8A petition and say, these are the bills, Respondent, that you were liable for because you actually Haven't they said that when they imposed the penalty? No. They haven't because there's nothing What do they impose the penalties on? If you don't owe it and you're not ordered to pay it, then what are they imposing it on? That's his question he's asking. And that's what they're saying. They come up with this $131,493.27 figure that I am saying to you that there's no basis in the record for. If you actually do all of the math and you look at the last spreadsheet that's put into evidence by the claimant during the June 8, 2011 hearing, the total bills that were out there was $131,426.22, and the employer had actually paid $4,695.30, leaving $126,730.92. The numbers aren't consistent with the evidence. So why don't we just modify it to that number? Because of the next sentence in the order. The next sentence in the order says that if respondent feels it is entitled to a fee schedule reduction for the medical charges, the burden is then on them to calculate those reductions. Without the calculation of the reductions, they haven't determined the amount payable. And until you determine the amount payable, payable, you can't assess the penalty. Because it has to be 50% of the amount payable. Somebody's got to make a ruling on what the reductions are. I mean, that's all it amounts to is the reduction. I mean, they've already ruled that failure to pay medical bills was vexatious, and it entitles the petitioner or the claimant to penalties. The problem with it is you can't calculate the amount until you first determine the amount payable, and the amount payable has to take into consideration statutory reduction. It's math. I mean, that's all it really is. I would agree with Justice Hoffman. And that's what I'm trying to say is that we have to come, the commission has to do its job. And I mean, I guess your question to me was can you do this? The order says you have to. Yeah, well, don't you have to do something else? Well, didn't the commission say it was your burden to calculate the reduction? And so can the employer just sit back and say, I'm not calculating it, and because I don't calculate it now, you can't tell me what I owe? I believe the commission in the testimony, they both, they came to Commissioner DeMuna and wanted clarification as to whose burden it was to actually make these calculations. I believe the commissioner said it was both parties' duties to do it. And ultimately, I think it's the commission's job to do it. I mean, it's the commission's job to make a finding as to what's payable with the fee schedule. But who's to present? I mean. I think the employer has to present the evidence of the reduction. And if they don't, they're in trouble because then the commission is going to say no reduction. You haven't proven your entitlement to reduction. And if you haven't prepared your bills, you prove your entitlement to reduction. Then we'll determine the amount payable. And once we determine the amount payable, then it's pure math for them. And that's what the commission said here. It said the employer cannot in good conscience refuse to make a payment because the fee schedule reduction was not calculated for them. Oh, no question. I agree with you there. But that has to do with the payment of the medical bills, not the payment of the penalty. Penalty's got to be calculated on amounts payable. I mean, it's what it says. So that is exactly what I'm trying to say is that the statute is clear and it says there has to be an award. There's never been an award relative to these medical expenses. Is there a monetary amount that's indicated? I guess we can call it a finding in their decision. Yes. But the commission has not entered an award as to what is payable for the compensation, the compensation between the medical expenses. They issued some direction telling the employer to look at this fee schedule and to make a case that it's not $130, it's $124. I don't believe they did make that direction. I mean, they didn't say it. All they said was, here, I'm penalizing you on this number that I've come up with, that there's no basis in the record, I'm giving you $19K, and I'm saying you can't even get to $19K until you get to the point where they've actually made an award as to what the actual medical expenses are based upon what's in the record and based upon the fee schedule. You were suggesting that earlier you would have difficulty after receiving the commission's decision advising your client as to whether or not they were responsible for paying the $131,000. And while the commission retained jurisdiction, is there any avenue available to you in terms of obtaining clarification in that regard? So relative to as you mean filing a petition for correction of a clerical error under Section 19-F, I'm not sure that this is a substantive ruling. I think, I believe that my only avenue was to take it up on an appeal because it wasn't just a, I mean, I wouldn't just call this a math error. I mean, there is more of a substantive issue to it that the commission would actually have to rule on, and I don't know, I wouldn't say that that provision would have been applicable for the commission to actually make a change to this decision because it was substantive. And I guess in response to that also, if I had to advise my client, you know, this is what they've ordered me to pay, go pay this now, and the claimant now doesn't have his medical bills paid because it's not, I've never been ordered to pay any of those bills. I appreciate the fact there's a fine here. But you were ordered, though, to come forward with some calculations, correct? Well, can I ask you a question? I don't know if I was ordered to do that. I'm not. Yes, sir. Do you have to be ordered to pay something before it's payable? If there's a dispute about it, I think. Hold on a second. You don't pay your T.T.D. You'd be penalized for not paying the P.P.B. long before the commission orders you to pay it. I mean, it's payable. So it occurs to me that what happens here is, you know, the petitioner gives you the bills and says these are the bills that are unpaid, this is what's payable. You turn around and say, yeah, but I'm entitled to a reduction because this bill, this bill, this bill, and this bill was incurred after February of 2006, and here's your check for 50% of it for penalty and whatever percentage, 20% for attorney's fees. And pay the bills. That was the purpose of the hearing. As I agree with you, the employer did make a good faith payment of over $135,000 based upon what they could ascertain between the medical records and the bills that were presented to them. And I acknowledge the commission took that into credit, but then they were still disputing other aspects of those bills, which is where all of these hearings came from. They were disputing liability. And with your example for the TTD, I don't believe I would pay the penalty if I, you know, acted unreasonably or vexatious until the commission actually told me I have to now pay this TTD and then that's how you would calculate. But that doesn't mean it wasn't payable. That doesn't mean it wasn't payable. I think a medical bill is payable the instance it's incurred. Now, you may not be ordered to pay it that day, but it's payable that day. If you don't pay it, you're ultimately down lying and going to pay the penalty for it, so. I understand what you're saying, but I think the statute says payable at the time of the award, and that's still where we're at is we still don't have that underlying award in the statute. Do you see any risk in not coming forward and doing anything and saying it's the commission's job and somebody else's responsibility? Isn't the employer going to be in potentially a worse or much more precarious position by taking the attitude and really don't have to do anything then? I think in general it's always better to be proactive than reactive. There's no question about that. So what are you telling us? How are we being proactive in this case? When I asked you, you said you didn't think you had an obligation to come forward and do anything. I said ultimately I believe it's the commission's obligation to make those final determinations. But didn't they order you to do something? I think what Commissioner DiMuno said, and I believe, I don't want to misquote this, which hearing he was at, I'm not sure if it's the April or the May, they did ask the commissioner for clarification, and he said it's both parties' job to do this. What is your interpretation of that order? Relative to that both sides had, you know, should go through the fee analysis schedule. And he was really, and at that time he wasn't ordering, I mean, I don't take those hearings as I'm ordering you to go do this. He was telling the parties go work this out. I mean, that's clear through the analysis. And your response to that is what? Just out of curiosity, what's your response to that? Try and go work this out. I believe that they did. I mean, they did make a payment of $135,000 based upon the bills and the records that had been previously received from the claimant's attorney. And I believe that there were still ongoing disputes as to the other bills. And, in fact, So doesn't the commission say, you know, they say, you know, it's both of your obligations to tell us what the fee schedule is. But you don't tell them what the fee schedule is. So the commission says, fine, we're going to award penalties based on the amount with no reduction. Yeah, and neither did the claimant. So they're only penalizing the employer for what they perceived as, at least the commission, at least in one hearing, perceived as both sides' duty to do. But then the employer becomes penalized even though the claimant didn't bring forth the fees. And let's just suppose that the law is it's the employer's duty. Well, presumably it's the employer's duty. With regards to what Commissioner DiMino said, let's just assume for a moment the law is it's the employer's obligation to calculate the Then I would request, if that's what the law says, then I would request you vacate this, send it back to the commission, and that's my duty then to show what that fee schedule is. And once that is determined, you will have the award. And the commission thinks at that point that the employer's behavior was still unreasonable, vexatious, pertinent to Section 19K. It's certainly within their prerogative to enter the penalties. They've already decided it was unreasonable and vexatious that you didn't pay the bills to begin with. Yeah, they've already decided. Failure to pay medical bills was vexatious. The only question that you've got to argue about is the amount, not the if, the amount. Okay. I mean, I can't see it any other way. The problem is whatever Commissioner DiMino said he might have said, but the order actually reads the respondent is supposed to do this. But it occurs to me that the obligation for calculating the reduction in the last analysis is that of the commission. They're the one that has to make the award. It's the respondent that's got to give them the evidence to calculate it on, but it's their obligation. Whose obligation is it to calculate DTD? Ultimately, it's the commission's. But so I don't know. Do you think the commission could, upon a remand, order penalties for failure, not just to find the amount upon which prior penalties are to be assessed, but also penalties beyond that? You mean from this date forward, from the date of whatever date the commission entered this award, assuming the bills haven't been paid? No. I believe that once they read, I believe that they can, I think Justice Hoffman has indicated they've already ruled on the penalties. And once we come up with the actual underlying medical expenses award, then if I don't promptly pay them, yes, certainly they can. That's the whole point. There's an award. And if I don't pay them, they can assess it. Can they now assess me again for penalties because I haven't in the meantime paid the medical expenses for which I don't think that there's actually been an award? I would say, I would argue no, because I appreciate the fact that there's a finding of the 131, 493, 27, but that's not an award. I just don't even know what to tell my client to pay, because this is, what if I told my, you affirmed this, I tell my client to pay this, we pay the penalties, we pay the attorney's fees, there's still no payment being made on the medical expenses. So then if counsel comes back in on a further 8A saying, hey, I want these medical expenses paid, couldn't I argue potentially race judicata? That was already taken care of. We already were here on these hearings. We had six of them. An award was entered by the commission. How should I then be punished because the commission hasn't done its job? That's race judicata. They didn't know. I mean, if this is a final award, if you're telling me this is the final award, I don't know then, then I think it would prove my point then if the claimant had to come back in and get another award under the 8A for the medical expenses, because then there really wouldn't be an award for the medical expenses within this commission's decision. Okay.  Okay. Sorry. Thank you, Justice. Counsel. Good morning, members of the board. I'm Mark DiPaola. I was the attorney in the record, not the original attorney who settled the case. Let's start at the end. The fee schedule and the computation, two points. Number one, it's clearly a business in and of itself, fee schedule. Reimbursement rates. Medicaid has their reimbursement rate. They know it. They're experts at it. Then comes Medicare. They're next. Then private health insurance. They're next. And still, by barely a little bit, workers' compensation is still the highest. They're in that business. You know, when you say that the commission should do it, they don't have the capability to do it. They don't have the manpower. They don't have the expertise. It is a science what part of the body was draped, what visits go under global care. It's a whole science. They're in that business. They should do it. But this is not a fee schedule case. It's not that the fee schedule doesn't apply. I agree with counsel. After February 06, those medical expenses occurred, applied to the fee schedule. We didn't get the medical bills awarded here. And that argument is disingenuous. You look at my exhibits, and looking ahead in the quagmire I was in over the course of 14 months there trying to get this paid, I laid out several spreadsheets with the total amount of the bills, which are several hundred thousand dollars, the amount paid per health insurance, per their reimbursement rates, what they paid, the balances owed from deductibles and co-pays by the claimant, which was about $50,000. What we asked the commission for and what they awarded was not the whole bill. They didn't award the bills. They awarded what he had become indebted for, $57,000 in co-pays, and $220,000 that he is being done for by health insurance, which they do not have credit for. Those bills have already been reduced. They didn't avail themselves to the fee schedule because the fee schedule for workers' comp is higher than, higher than health insurance reimbursement rates. That's why they didn't do it. That's why. The argument changed at every hearing. The first hearing was I had been dealing with the other attorney, my predecessor, never gave me the bills. I took over 1,500 pages, excuse me, records, 1,500 pages of records with a long letter pointing them, because it's long, it's voluminous, here it is. This is where the stuff happens. We don't have the bills. Here's the bills. Here's the spreadsheet, the entire bill, what health insurance paid, what the balance was, what the claimant owed. We should hear from Dr. Haskell. I found Dr. Haskell. He's in his middle 80s. Found him. He remembered Akuta. It was a catastrophic accident. Did a lot of work on him. Dr. Haskell testified. We agree we owe the money, but the records aren't certified. Aren't certified. As if that would make a difference in why they would be liable for the bills. Another commissioner said certify the records. Well, when he asks me to do it, he's not asking me. He's asking Akuta. If you could imagine a claimant, he of the amputated foot, he of the replaced hip, he of the replaced knee, making spreadsheets, making certifications for the records. Giving the certification. Last hearing, it's not in fee schedule. And we don't know how to do fee schedule. We don't know how to do fee schedule. The insurance company, the workers' comp insurance company, doesn't know how to do fee schedule. That's why they were penalized. That's why. For that 14 months of shamefulness. They didn't get penalized in the first half, which they tendered. They were, I think, $1.60 off in our figures when they finally worked it out. It's in the records. $0.60 or $1.60. It's fine. They didn't get penalized on that, even though I had 50 hours in to get those bills paid at that point. And several hundred dollars of expenses copied records over and over again. They didn't get penalized. When they finally stepped up and said, well, they have to be certified, we certified them, we have to have them in the fee schedule, that's when they got penalized. At that point. And I disagree with you, Your Honor, that that determination of the fee schedule has to be made before penalties can be awarded. Because, number one, if they do not avail themselves of the fee schedule, then they should be made to pay the whole amount. But more importantly, in this case, the fee schedule doesn't apply. And the statute says that the providers are stuck, once they accept payment from a collateral health insurance, then they are stuck with that payment. They can't go back and then claim the difference between workers' compensation and health insurance at a later date. So what you're saying, in effect, is what the employer here owes is to reimburse the health insurers that have already paid and hold your client harmless. Right. We didn't get the medical bills, and I didn't ask for the medical bills. Because I didn't want to be here making that argument with them. After 30-something years of practice, I can tell when there's obstructive conduct on the other side. So your position is this business about they're supposed to calculate the fee schedule is just surplus verbiage because the providers have accepted amounts less than the fee schedule would have given them. That's what the statute says. And Medicare conducts their own fee schedule, reimbursement rates. They pay. Medicaid pays theirs. Blue Cross Blue Shield pays theirs, according to which contract they have in effect. And workers' compensation pays theirs. And they're the workers' compensation company. Imagine going to the hospital, Your Honor, and getting a bill for $100,000, and your company says, your health insurance company says, we're not going to pay this. You didn't put it into the reimbursement rates. Imagine. It's ridiculous. That is a shameful argument. That is a shameful argument. And that is a microcosm of the fantasy that workers' compensation has dwindled to this last few years. That is not a week that goes by that I am not on that eighth floor arguing for four weeks of benefits or an MRI or six weeks of physical therapy, put it in the fee schedule, compare it to the utilization review. Where is the script for it? They didn't tell us how much money we owe. They didn't tell us that we owed $131,000, so we shouldn't be penalized on it. That is a shameful argument. And that figure is the addition of the amount owed to health insurance, which my client is being liable for and is being done for, in addition to the $50,000 that he is liable for in co-pays for all of these multiple surgeries. They owed that money as soon as those surgeries were incurred. And if they didn't think they owed it then, the minute that Dr. Haskell said, yeah, of course it's all because of that, of course amputating his foot further was the result of the first amputation, of course the knee had to be replaced, the hip replaced. And their cross-examination was two questions after they forced me to track him down, pay him $2,000 out of my client's money. Now, their cross-examination was, was there anything that wasn't related to the accident, doctor? No. Everything you treated him for related? Yes. They don't know they owe that money? Is that believable that we're here on this case? Because it's not six weeks of benefits and $2,000 penalty or $1,500 penalty that gets slucked under the rug. That's why we're here on this case, because they let it go so long and they were so obstructive and the commissioner became so weary of the changing reasons that they would not make payment that he penalized them. And it's significant now. And it's significant. My client now has thousands of dollars of record path expenses, deposition expenses. We won't talk about credit or hardship when you owe $50,000 and a municipal benefit plan is hounding you for another hundred and something thousand dollars. We won't talk about that kind of hardship. Counsel, can I ask you a question about what the opposing counsel suggested might be a race judicata implication of all of this? If the 131-493 figure is considered an award, is that capable of being susceptible to race judicata at a later point for your client? No. Is it subject to reduction, is the question, by fee schedule or by? In future. And it may be that it may not be what counsel was suggesting here, but if that were to be found to be the commission's award. Right. of the amount owed to health insurance and the amount owed from deductible and copay. Right. They made a payment, a significant payment. They paid everything. We were, like I say, $1.60 off or some small figure. They made a payment up to February of all the charges that occurred up to February of 06 and came and said they could not pay further because it had not been reduced to fee schedule. Who was going to do this for them or who they thought was going to do this for them, I don't know. Certainly Mr. Akute can't do it. I disagree with Justice Hoffman with regard to the commission being able to do it. They certainly can't do it. I have attempted to do it. I can represent to this court on several occasions. And it is difficult. It is more confusing than preparing a tax return. And it takes a significant amount of expertise. And it is subject to discussion, which is why insurance companies and providers of services often go back and forth. You miss this because this was included in the global office visit. Like I say, this two separate areas of the body were draped during the surgery. You, therefore, incur CPD number 167. It is not. I would challenge the justices to be able to do it. I want to ask a question. I think we've been operating under a little misconception here. If you take a look at 19K, the award that they're talking about is the award of the penalties, not the award of the underlying bill. The sentence says, commission may award compensation additional to that otherwise payable under the act equal to 50% of the amount payable at the time of such award. Such award means the award of the penalties. So there doesn't have to be an underlying award of medical bills. They're nearly, it must be 50% of the amount payable at the time they assess the penalties. That's right. And I agree, sir. I agree. Does the McMahon case, the Supreme Court case say that though there needs to be an award? You know? The order is not perfect. If the order were perfect, it would say they do owe 135,000, and they owe 65,000 in penalties. But it certainly is implicit. And this argument that, oh, we don't know how much we owe, they never told us. It is a microcosm of the case. We don't have the records. We don't have the bills. We don't know what these bills are for. Spreadsheet, hours of time in the record that show each date of service, where it was incurred, and what part of the body was taken care of. We haven't heard from Dr. Haskell. Dr. Haskell. We don't have the records that are certified. We don't know what the fee schedule is. That's what's occurred here. And that's why I'm asking you not to send Mr. Acute back to the commissioner, to get another new commissioner, another myriad of hearings and miscommunications, and the record is jumbled already, as you can see. I'm asking you to confirm this order to the commissioner. Thank you, counsel. Counsel, you may reply. Counsel spoke about how the fee schedules are less than what is paid by the health insurance carriers. I don't know that because I don't know what the fee schedule actually is. I'm not sure where that comes from when he was making the argument that they've accepted these fees and they're lower than the fee schedule. I think that's the whole point. We need to know what the fee schedule is. And I think the fee schedule is, in fact, determined by the Illinois Workers' Compensation Commission. You can actually go on the website, and that's how you actually do the analysis, I believe, is they actually set the parameters of what the fee schedule is, and it changes on a yearly basis. That's my understanding. Relative to counsel's argument that this was ongoing and obstructive from the employer, you know, I'm just reading a record from the conduct that happened at the time, and this is, you know, 20 years of treatment, and I think actually it's more like probably more like 10 because it doesn't appear that he had a whole lot of treatment in the 90s. Ten years of treatment where the claimant never made any sort of claim against the employer to pay any of these benefits until, you know, 10, 11 years on after the treatment. That ship sailed, though, hasn't it? I mean, the commission has said, you know, it was unreasonable and vexatious for you not to pay these bills. And what you're telling us is you still haven't paid any of these bills after February 1, 2006. I can't tell you that. I don't know that for certain. I'm sorry. Well, you keep saying you don't know what to tell your client to pay because there was no specific award, but no attempt has been made to figure out out of this $131,000 that the commission said it was vexatious and unreasonable for your client not to pay. No attempt has been made to figure that out since then? I can't tell you that. You don't know. You can't say they have been paid. No, I can't tell you that either. I mean, I'm not the one who is responsible for that portion of this. You know, I wrote the brief and I'm here before you now, and so I just can't answer your question. I wouldn't – I don't want to tell you something I don't know. I mean, I don't know. It's very possible none of them have been paid. And I don't know what attempts have been made. I can't tell you that. But – and I guess I would say to Justice Hoffman that I interpret the statute a bit differently, and I think that this Court has already said that in its past, too, that when you are awarding the penalty under Section 19K, that it's a simple mathematical calculation of 50 percent on the awarded amount. So I don't think you can call that the – Or the amount payable. The amount payable at the time of the award. Right. Correct. That amount payable at the time of the award. It's not – you know, so I think it does – And the Commission determined an amount payable and said, we're imposing a penalty of 50 percent of that amount. They didn't make an award. And I guess that's where we're saying the difference. And that number, that finding that was there, is not – if you go through the records, it's not actually supported by any of the records that are in there. You can't come up with that figure. It's not – the medical records and the bills don't add up to that figure. So I appreciate they came up with the figure, but that's because none of the medical bills have actually been awarded. So thank you. Thank you, counsel.